# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PETE LIVELY, <br> MARVIN SWOPES, and <br> DORVIN CONSTANT, <br> <br> Plaintiffs, <br> <br> v. <br> <br> PAUL B. SKIDMORE, individually, <br> and BOARD OF COUNTY <br> COMMISSIONERS OF KAY <br> COUNTY, <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. CIV-19-446-D |

## ORDER

Before the Court is Plaintiffs' Motion to Compel Deposition of Counselor, Brian Hermanson [Doc. No. 19]. Defendant Board of County Commissioners of Kay County ("the Board") has responded in opposition [Doc. No. 20]. Upon consideration of these filings, the Court finds no need for a hearing, and issues its ruling.

## BACKGROUND

Plaintiffs, formerly employees of Kay County, assert claims arising out of Defendants' termination of their employment. The Board is being sued, and Defendant Paul Skidmore, a former Kay County Commissioner, is being sued in his individual capacity. Plaintiffs allege that after they exhibited political support for Mr. Skidmore's opponent they were told either to resign or they would be terminated. According to Plaintiffs, Mr. Skidmore and Kay County District Attorney Brian Hermanson "coerced [] Plaintiffs to choose their own method of termination of employment." Pet. at ¶ 18 [Doc.

No. 1-2]. Plaintiffs assert federal claims against Defendants under 42 U.S.C. § 1983 for violations of their substantive and procedural due process rights and their right to equal protection under the Fourteenth Amendment. Plaintiffs also assert that their right to engage in political activities and speech under the First Amendment was violated. Further, Plaintiffs assert claims for wrongful termination and violations of their Oklahoma constitutional rights.

Plaintiffs' counsel conducted Mr. Hermanson's deposition on October 16, 2019, but Mr. Hermanson, upon advice of the Board's counsel, declined to answer questions that counsel thought invaded the attorney-client privilege—particularly questions concerning Mr. Hermanson's conversations with Mr. Skidmore prior to the termination of Plaintiffs' employment. Plaintiffs contend that Mr. Skidmore has waived the attorney-client privilege by listing Mr. Hermanson as a possible witness who "may have relevant information regarding conversations with and advice given to Defendant Skidmore . . . [and] may have relevant information regarding Skidmore's meeting with Plaintiffs regarding termination." Skidmore's Initial Disclosures at 2 [Doc. No. 20-2]. The Board asserts that there has been no affirmative act by the Board to establish waiver of the privilege.[1]

## ANALYSIS

Pursuant to FED. R. EVID. 501, in this federal question case, federal common law governs the scope of the attorney-client privilege. *In re Qwest Communications Int'l Inc.,*

---

[1] The Board also asserts that Mr. Skidmore cannot waive the privilege as an individual since he is no longer a representative of the Board. Because the Court finds that neither the Board nor Mr. Skidmore have waived the privilege, the Court does not reach this argument.

450 F.3d 1179, 1184 (10th Cir. 2006). It is well established that the attorney-client privilege attaches to corporations. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) (citing *Upjohn Co. v. United States*, 449 U.S. 383 (1981)).

The United States Supreme Court in *Upjohn Co. v. United States* decided that the attorney-client privilege not only covers communications between counsel and top management of a corporation, but also, under certain circumstances, communications between counsel and lower-level employees. *Upjohn*, 449 U.S. at 396–98. The Supreme Court emphasized that any other approach would "overlook[] the fact that the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id*. at 390. Application of the attorney-client privilege must be determined on a case-by-case basis. *Id.* at 396.

Although the Supreme Court in *Upjohn* declined to articulate a set of rules for applying the attorney-client privilege in the corporate context, its focus was on the position or status of the employee with whom the communication was made and the context of the communication. *Id*. at 394. Here, the communications at issue were made between Mr. Hermanson and Mr. Skidmore at the time Mr. Skidmore was a county commissioner and Plaintiffs' supervisor. Mr. Skidmore was an obvious, primary source of information concerning Plaintiffs' job performance and any facts relating to their possible termination. Considering the principles reviewed in *Upjohn*, the status of the employee and the context of the communications, the Court determines that such communications are subject to the privilege.

3

The Board, as the party asserting the privilege, bears the burden of demonstrating that it applies and that it has not been waived. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010). Confidentiality is essential to the privilege, and confidentiality is lost when the client discloses the substance of a privileged communication to a third party. *United States v. Ary*, 518 F.3d 775, 782 (10th Cir. 2008). Thus, voluntary disclosure to a third party waives the privilege. *Id*. Protection under the privilege extends only to communications and not to the underlying facts. *Upjohn Co.*, 449 U.S. at 395. "A fact is one thing and a communication concerning that fact is an entirely different thing." *Id*. at 395–96.

As explained by the Tenth Circuit in *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998), courts generally employ some version of three general approaches to determine whether a litigant has waived the attorney-client privilege. Under the first approach, the "automatic waiver" rule, a litigant "automatically waives the privilege upon assertion of a claim, counterclaim, or affirmative defense that raises as an issue a matter to which otherwise privileged material is relevant." *Id*. Under the second approach, the privilege is waived only when the material to be discovered is both relevant to the issues in the case and "vital" to the opposing side's defense. *Id*. (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975) (which sets forth a three-part test, including relevance and vitality prongs). Finally, under the third approach, a litigant waives the attorney-client privilege if, and only if, he directly inserts his attorney's advice as an issue in the case. *Frontier Ref., Inc.*, 136 F.3d at 699.

Concluding that Wyoming would not adopt the "automatic waiver" rule, the Tenth Circuit in *Frontier Refining* decided not to choose between the other two approaches because the defendant failed to demonstrate its entitlement to the privileged materials under the more liberal of the two—the intermediate approach cited in *Hearn v. Rhay*. *Id*. at 701. Under the *Hearn* test, each of the following conditions must exist to constitute waiver: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to [its] defense." *Hearn*, 68 F.R.D. at 581.

Regardless of which approach is applied here, the Court still arrives at the same conclusion. From the Court's review of the record, neither the Board nor Mr. Skidmore have asserted an advice-of-counsel defense. Defs.' Answers [Doc. Nos. 3, 6]. Mr. Skidmore's initial disclosures do not disclose the substance of his conversations with Mr. Hermanson, but rather indicate that Mr. Hermanson "*may* have relevant information." Def.'s Initial Disclosures at 2 (emphasis added) [Doc. No. 20-2]. Further, there is no indication that Mr. Skidmore relied on Mr. Hermanson's advice in terminating Plaintiffs' employment.[2] In summary, neither the Board nor Mr. Skidmore have placed protected information at issue through an affirmative act.

---

[2] Mr. Skidmore's deposition testimony does not change the analysis. Skidmore's Dep. Tr. at 171–72 [Doc. No. 19-3]. He does not disclose the substance of his conversations with Mr. Hermanson or indicate that he relied on Mr. Hermanson's guidance in terminating Plaintiffs' employment.

5

## CONCLUSION

Accordingly, Plaintiffs' Motion to Compel Deposition of Counselor, Brian Hermanson [Doc. No. 19] is **DENIED**.

**IT IS SO ORDERED** this 14th day of February 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge